**FISHER et al. v. DISTRICT OF COLUMBIA.**

No. 9592.

United States Court of Appeals
District of Columbia.

Argued Oct. 16, 1947.

Decided Nov. 10, 1947.

Mr. Vincent A. Sheehy, Jr., of Washington, D. C., for petitioners.

Mr. George C. Updegraff, of Washington, D. C., Assistant Corporation Counsel, District of Columbia, with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, District of Columbia, both of Washington, D. C., were on the brief, for respondent.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

This petition for review of a decision of the Board of Tax Appeals for the District of Columbia requires us to determine how the real estate of a decedent is to be valued for inheritance tax purposes.

It is asserted by the petitioning taxpayers that, because the annual valuation of real estate required by §§ 704 to 709 inclusive of Title 47, D.C.Code (1940) [1] "shall constitute the basis of taxation for the next succeeding year * * *," such valuation must be adopted by the assessor in appraising for inheritance tax purposes the real property of one who dies within the succeeding year. The District of Columbia, which is the respondent, contends on the other hand that the valuation ascertained in accordance with §§ 704 to 709 is simply that to which all tax levies on the real estate itself must be applied; and that such valuation has no relation to inheritance taxation, since § 1602 of Title 47 directs the assessor to appraise real estate for inheritance tax purposes at its market value at the time of the owner's death, and provides that the tax shall be paid on that value.

A second question in the case is whether, in the circumstances here presented, an inheritance tax can be imposed with respect to the transfer of assets less than six months after a prior tax had been levied with respect to the transfer of the same assets.

These questions arose from the following situation: Willis W. Fisher, who died May 13, 1946, devised an undivided interest in real estate to his wife, Mary I. Fisher. She filed an inheritance tax return listing the undivided interest at $22,278.00, which was its then current valuation for taxation determined under the process prescribed by §§ 704 to 709. But the assessor, for the computation of the inheritance tax, appraised the interest in realty at $37,125.00.

Mrs. Fisher died intestate in October, 1946, and the interest passed to her three sons. Her administrator filed an inheritance tax return showing the divisions of her estate among her heirs at law, but claiming that no inheritance tax was due. The assessor disagreed and, in computing a tax, again appraised the undivided interest in real estate at $37,125.00.

The action of the assessor with respect to both estates was sustained by the Board of Tax Appeals, and the taxpayers have asked us to review that action.

Whether the assessor is bound by the current annual valuation made under the section of the Code referred to above in appraising real estate for the purpose of computing an inheritance tax depends, in large part, upon the true meaning of the crucial language in § 709, which is that the valuation made under that and the five preceding sections "shall constitute the basis of taxation for the next succeeding year."

■ We have no doubt that the legislative intent was that such valuation should be the basis for the imposition of the next succeeding year's real estate levy. Section 709 is a part of the Congressional enactment known as the "District of Columbia Revenue Act of 1939." [2] That same statute amended and reenacted many sections of the District inheritance tax law, and included the paragraphs which are now §§ 1602 and 1603 of Title 47 of the Code. Section 1602 contains this sentence: "The (inheritance) tax provided in section 47-1601 shall be paid on the market value of the property or interest therein at the time of the death of the decedent as appraised by the assessor or, in the discretion of the assessor, upon the value as appraised by the probate court of the District."

The pertinent portion of § 1603 is as follows: "The appraisal thus made shall be deemed and taken to be the true value of the said property or interest therein upon which the said tax shall be paid, * * *."

■ Had it been the legislative purpose to require that the valuation under § 709 be used by the assessor in appraising the realty of one who died during the next succeeding year, it is unthinkable that § 1602 would have been written in its present form into the same piece of legislation. In construing a statute it is, of course, necessary to give effect to all its provisions, if possible; different portions of a statute will not be held to be repugnant to each other if

---

[1] These sections of the Code set up a carefully worked out arrangement for the annual assessment of all parcels of real estate in the District of Columbia, including equalization by a Board of Equalization and Review, and final adoption by the Commissioners of the District.

[2] 53 Stat., pt. 2, p. 1085, c. 367.

they can be reconciled. We are not to suppose, therefore, that in one section of the Revenue Act of 1939 the Congress instructed the assessor to appraise, for the inheritance tax computation, a decedent's real estate at its market value as of the time of death, but in another section provided that in doing so he be absolutely bound by an earlier valuation made through quite a different process and, as we think, for an entirely different purpose, thus rendering nugatory the assessor's duty of appraising as of the death date. Such a supposition would require a strained and illogical extention of the words "basis of taxation *for* the next succeeding year" found in § 709. We have italicized the word "for" because it points to the true meaning of the whole phrase. The petitioners necessarily read the phrase as though the word "for" had been replaced by the word "during," and so conclude that the valuation under § 709 must be the basis of any sort of taxation during the next succeeding year. Obviously, however, "taxation *for* the next succeeding year" has reference to taxes which are levied for a designated fiscal period. An inheritance tax is never a part of an annual tax levy on the mass of property in a taxing district.

Moreover, the provision for equalization in the assessing procedure outlined in §§ 704 to 709 indubitably stamps the valuation finally reached under that procedure as a basis for the levy of a tax on the real estate itself.[3] There is never a necessity for equalizing appraisals made for inheritance tax computations, as each occasion for the assessment of the tax arises fortuitously and as an isolated individual situation. We hold, therefore, that the valuation contemplated by § 709 was intended to be, and is, nothing more than the basis for the imposition of taxes upon the real estate itself, commonly regarded as real property taxes.

A tax on inheritance or succession is not a property tax, but is a duty or excise laid upon the privilege of taking property by descent.[4] It is the almost universal rule that inheritance taxes are privilege taxes and not property taxes.[5]

It is our view, therefore, that the inheritance tax in question here is not in any sense a tax upon the interest in realty, but is an excise required to be measured by the market value of the interest at the time the owner died.

The petitioners did not plead or prove in the proceeding before the Board of Tax Appeals that the market value of the property at the time of either death was less than the assessor's appraisal, but pinned their faith to the proposition that the former valuation was forced upon the assessor by § 709. Since we have rejected that contention, it follows that the Board was correct in upholding the assessor's action.

---

[3] In Huidekoper v. Hadley, 177 F. 1, 8, 40 L.R.A.,N.S., 505, the Eighth Circuit said,

"The words 'equalize' or 'equalization,' as used in revenue statutes of the kind now under consideration, have an accepted meaning throughout the country. Cooley, in his work on Taxation (2d Ed. p. 421), says:

" 'Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard so that no one of the parts may be compelled to pay a disproportionate part of the tax.' "

[4] Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Greiner v. Lewellyn, 258 U.S. 384, 42 S.Ct. 324, 66 L. Ed. 676.

[5] State v. Hogg, 123 Tex. 568, 72 S.W. 2d 593, and the numerous authorities there cited. See also In re McGhee's Estate, 105 Iowa 9, 74 N.W. 695, and Warner v. Corbin, Tax Comm'r, 91 Conn. 532, 100 A. 354.

In Warner v. Corbin, Tax Comm'r, decided by the Supreme Court of Errors of Connecticut, there were involved facts almost identical with those of the case now before us, apparently under substantially similar statutes. There the tax commissioner made application, as he was permitted to do by statute, to the Probate Court for a reappraisement of the decedent's estate to furnish a basis for the ascertainment of the succession tax. Warner objected on the sole ground that the real estate in question had been theretofore assessed for the purposes of taxation at the sum which appeared in the inventory and appraisal on file in the court. The Connecticut court pointed out that the inheritance tax is not a tax on real estate and held that the value at which the realty had been assessed for taxation did not bind the tax commissioner in appraising it for inheritance tax purposes.

The second point made by the petitioners has to do only with the estate of Mary I. Fisher. They claim exemption under § 1601(f), Title 47, of the Code,[6] asserting that Mrs. Fisher, who died within six months of her husband's death, had not come into the possession and enjoyment of the property devised to her. Their argument is that, because the real estate of a decedent is subject to a statutory lien to secure the payment of his debts, Mrs. Fisher somehow never enjoyed the unrestricted right of alienation which is an important element of property. This is, in our view, obviously unsound. When the property came to Mrs. Fisher it was burdened with the lien; she had the immediate right to possess and full power to convey what she had inherited.

Affirmed.

---

[6] The pertinent portion of that section is: "(f) Where any beneficiary has died or may hereafter die within six months after the death of the decedent and before coming into the possession and enjoyment of any property passing to him, and before selling, assigning, transferring, or in any manner contracting with respect to his interest in such property, such property shall be taxed only once, * * * ."